May it please the court, my name is Peggy Sue Juergens and I represent Mr. Figueroa on this appeal and I would like to ask Mr. Figueroa if he would be so kind as to state his name and where he is from. I won't reserve any time for rebuttal. There's two issues here before the court today and I'm seeking guidance from the court as to how you'd like to proceed. I raised the original on direct appeal, the issue about the district court's failure to give the informant credibility instructions, and then in the supplemental brief I requested permission to raise the Blakely issue. The government has opposed that motion and I'm wondering from the court whether you would like me to go forward with the Blakely issue as well this morning. My colleagues may have other views. Mine at this point would be that we have separately, I don't know whether the government has gotten the briefing order, before we got their response we issued a briefing order asking them to respond on the merits. At this point they really haven't done that and I would think that we should leave that aside until we get the briefing in hand and decide what we want to do. But if either of my colleagues wants to ask questions on that, that's fine. Okay. Your Honor, I'll address the first issue then. I don't see any particular merit in pursuing it at this point. Don't consider it a dead issue. Okay. Thank you, Your Honor. Then I'll go directly to my issue about the jury instructions. In regard to this issue, the court failed here to give the model jury instruction 4.10, which is the informant credibility instruction. And first I'd like to address the issue about the standard of review that applies here. Your Honor, it's the defense position that the abuse of discretion applies and not the plain error as the government claims. And an understanding here of the sequence of events at the time of jury charging is very important to understanding this standard of review issue. The court charged the jury. Then the court dismissed the jury to go to lunch. The court didn't dismiss the jury to deliberate at that point. Immediately after dismissing the jury for lunch, the court asked counsel if this jury informant instruction should be given, the 4.12, and invited the defense counsel and the U.S. attorney to comment. Defense counsel asked that it be given, and the U.S. attorney listed several reasons why it shouldn't be given. As you read in the record, ultimately the court decided not to give the informant credibility instruction. I guess what's at issue is whether what the judge did instruct on, which was you've got to view this with extreme caution, is enough. That's correct. That's what he did, Your Honor. But it's the defense position here that the combination of instructions that were given, if we're going to look at them as a whole, we look at instruction number 8, which was the general witness credibility instruction. And then we look at the model 4.12, which is about the fact that Mr. Garcia had entered a plea. Those two given together, taken together, I don't believe meets the Holmes requirement here. Very important distinction in the Holmes case. They gave that general witness instruction that was given in this case, although in Holmes, if you look very closely, they added the language lifted directly out of the informant credibility instruction, which we believe should have been given, which says that a witness, the jury needed to also consider whether the witness was receiving money or benefits from the government in connection with that particular case. There wasn't any such language in this present case, Your Honor. So it's our position that But your problem is I've been having somewhat difficulty also getting hold of exactly what he should have said that he didn't say. Right. Exactly what he should have said is that they should consider whether this person is getting benefits. Or receiving benefits, Your Honor. And along with that, as the instruction further tells, that because of that, that their testimony should be taken with greater caution. And that was not covered. They were told to take his testimony with great caution. Excuse me? They were told to take his testimony with great caution. Right. But what they weren't told is the reason why. And that's what is the crux of the matter here, is I don't believe that the instructions here have met the Holmes test. This was very important testimony for Mr. Garcia. As you can tell from the facts in the case, he was a co-defendant who had also been charged. He had solicited clients in this case. He had also impersonated Mr. Linares and forged his signature. He had impersonated him in the bankruptcy proceedings. He knew, excuse me, Your Honor? Holmes is clear, and other cases are clear, that this instruction is only mandatory when and under certain circumstances. Correct, Your Honor. Something in this case that maybe isn't in Holmes, there was extensive cross-examination of this witness as to what the status of his sentence was, what was maybe going to happen to him. So the jury got a full sense. Look, this guy thinks he's going to get something out of the government because he's testifying. There was cross-examination. You're correct, Your Honor. I guess what our point here is that at the time of charging the jury, of reminding them once again of the importance of the testimony, this person knew the inside workings of this whole fraud scheme, and it's our position that his testimony was, well, not only important but crucial here in the government's case. When the instruction was given the first time, which was while he was testifying, more likely to make some impression on the jury then than later, the benefits language wasn't clear. You're correct, Your Honor. We're really having a minuscule little dispute here in terms of what wasn't done. What wasn't done is that at the end, as opposed to earlier, while he was told, while the jury was told to view his testimony with great caution, they weren't told that the reason for that was that he was expected to receive benefits, although they were told that earlier. That's correct, Your Honor. I understand the argument. And it's our position, Your Honor, that there was an abuse of discretion for not bringing that up again at the actual time of charging the jury. And for those reasons, we've asked that his conviction be reversed here. Okay. Thank you. Thank you. Good morning, Your Honors. Don Curry on behalf of the United States. Do you want further time to or time to further address really the going in question on Blakely, which is whether we ought to consider the issue here at all? Do you consider that you've made your argument on the papers that you filed, although they kind of crossed the mail with our request? I would just simply add that there was no constitutional objection at trial raised by the defendant in this case to the constitutionality of the sentencing guidelines. That's what I'm asking you since we told your opponent not to discuss it. Is it really for you to discuss it but to tell us whether you are intending to file any more paper other than what you filed? If the Court is going to find that the defendant did not waive this issue by failing to raise it. Not on the question of waiver. You've said your piece. All right. Is that right? I mean, that's what I'm asking. Well, that's what I'm asking. I don't mean verbally. My understanding of what happened here is we issued an order asking you to respond, but before you got a warrant, you responded. And I have not seen that order, so this is the first I've heard of it. So we issued an order, but the order probably asked for something very much like what you filed. So what I'm asking you is do you want to file anything else? Do you want to go back and look at the order to see whether you're going to file anything else? I think it would be useful for me to see the order. Our position essentially is that the defendant has waived his right to raise the Blakely issue in the context of this appeal because he neither raised it in the trial court nor did he raise it in his opening brief. Whether you're going to file some more papers, that's all I want to know. If the court is going to entertain the issue, absolutely. Now, on the question of whether the court's going to entertain the issue, you think you – all we're trying to find out is if you have anything else to say on that subject since what you said was said before our order was issued. I don't – I think we've – I think we've explained why we believe the issue has been raised in the paper that we did file, and that would be our position with respect to the waiver issue. If the court is going to find that the defendant has not raised and decides to entertain the issue, then of course we would want the opportunity to fully brief the Blakely issue generally and as it might apply in this case, including plain error issues, et cetera. With the – with respect to the issue raised in the opening brief, that is the question of whether or not – Don't you wish you had agreed that that instruction should be given? No. And the reason is, one, I wasn't counsel at trial, but –  No, I don't, Your Honor, because of the context in which the issue was raised. The issue was the suggestion that the court might have given model instruction 4.10 was raised sua sponte by the trial judge after the jury had been instructed. I understand that. After argument had been made, after the jury had been instructed twice to consider this witness's testimony with great caution, which in my view is functionally equivalent to telling the jury that the witness's testimony should be considered with greater caution than that of other witnesses, so that to call the jury back, perhaps after they had started their deliberations, they had been sent to the jury room, they were in the jury room presumably beginning their deliberations at the time that this issue was discussed after lunch by counsel, so that if the judge had decided to give the instruction, it would have required the jury to be called back and be given this one instruction, which in the government's view would have unnecessarily highlighted once again this witness's testimony and essentially told the testimony in essence to telling the jury to disregard this witness's testimony. So I don't believe that the – I don't wish that the government had agreed to giving this instruction. Because the jury was perhaps deliberating, although I – do you think the record's quite clear on that? I don't think it's absolutely clear. What is clear is that the judge sent the jury to lunch, and after lunch the judge with counsel addressed this issue, so that from what we can determine from the record, the jury had returned from lunch, had begun their deliberations at the time that this issue was discussed and finally ruled upon by the trial judge. We just know that they were in the jury room. That's all we know. They had been instructed to begin their deliberations upon return from lunch. So one, I think, can assume that they had begun their deliberations. But we also – I mean, that would be sort of odd, the judge having raised all this, to have not stopped them from deliberating, and we just don't know. Well, there's no indication in the record that he did. I mean, what the record shows is that he sent the jury to lunch, told them to begin their deliberations upon their return, and there's no additional information in the record that suggests that he told them to not begin deliberations until after this issue had been discussed. Do you think the rule requiring that an objection be raised before deliberations start would apply to the situation where the judge had essentially invited a discussion and scheduled it at this time? I do. And it's for that reason that we claim that the plain error standard should be applied. So ordinarily, why we impose a plain error is because we want to give the district court a clear chance at the issue. Well, the clear chance was the judge knew. He's the one who raised it. So I don't know whether this is a plain error situation. If it's not a plain error situation, we're dealing with abusive discretion, and in our view, the outcome is no different. The question here is whether or not the jury instructions as a whole fairly addressed the issues at trial or misleading. And in this case, there is no question in our view that the jury instructions taken as a whole were, A, not misleading, and, B, did adequately address the issues raised. The cases that we cited in our brief under the abusive discretion standard, I think, clearly support that view. And as I've indicated before, the giving of jury instructions twice, telling the jury to view this witness's testimony with great caution, is functionally equivalent to the language that defendant now claims should have been given in an additional jury instruction. In our view, there was no error, neither plain error nor error under the abusive discretion standard, and for that reason, we urge the Court to affirm in this case. Thank you very much. Thank you. Counsel? Only if you have something you want to say. Your Honor, as I said, I didn't want rebuttable. If I would help the Court, just to clarify the factual issue about whether the jury had gotten the question or not, I'll refer you to the record. It's a transcript, 1483, and it's in the supplemental excerpt of the records provided by the government, page 77, where the Court specifically says, if we conclude that we should give it to them, then I want to give it, that's the instruction, to them as soon as they get back from lunch. And I believe, as Your Honor has noted, that Rule 30 has been met here. The requirements are all about making sure that the district court knows the law and discusses the law and has the objections before it. Thank you. Thank you. Thank you, Counsel. United States v. Figueroa is submitted.
judges: B. Fletcher, Hamilton, Berzon